IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02944-PAB-CBS

ALEXANDER STANLEY,
    Plaintiff,
v.

MALINDA MCMILLIAN,
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendant McMillian's Motion to Dismiss. Pursuant to the Order Referring Case dated April 3, 2013 (Doc. # 21) and the memorandum dated May 30, 2013 (Doc. # 29), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Stanley's Response (filed July 15, 2013) (Doc. # 50), Ms. McMillian's Reply (filed July 25, 2013) (Doc. # 51), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Proceeding *pro se*, Mr. Stanley filed his "Amended Prisoner Complaint" ("AC") at the court's direction on March 13, 2013. (*See* Docs. ## 8-15). On March 27, 2013, the court dismissed from the case all of the Defendants except Defendant McMillian. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 16)).

The events forming the basis of this civil action occurred while Mr. Stanley was incarcerated at the Crowley County Correctional Facility ("CCCF") in Olney Springs, Colorado, operated by Corrections Corporation of America ("CCA") for the Colorado Department of Corrections ("CDOC"). Mr. Stanley alleges that inmate "Robert Lopez was unconditionally discharged from the Colorado DOC" on November 8, 2011. (*See* Doc. # 15 at ¶¶ 15, 113). Two

days later, on November 10, 2011, "a $200-electronic funds transfer (EFT) was made to my DOC Inmate Account through MoneyGram service, from Felicia Montoya, who is Robert Lopez's daughter." (*See* Doc. # 15 at ¶¶ 16, 114). On November 15, 2012, Mr. Stanley "received a Memorandum from defendant Malinda McMillian, stating that '[t]wo-hundred dollars ($200.00) was deposited to your inmate account by the daughter of another inmate, in violation of ARs 300-01 and 300-38. These funds will be confiscated pending further investigation.' " (*See* Doc. # 15 at 5-6 of 61; *see also id.* at ¶ 115). Mr. Stanley alleges that the funds were confiscated from his account that same day. (*See id.*).

In December of 2011 and January of 2012, Mr. Stanley sent kites to Defendant McMillian, seeking return of the $200.00. (*See* Doc. # 15 at ¶¶ 21-26, 117-122; Doc. # 1 at 47-49 of 61). Defendant McMillian responded that he had violated Administrative Regulations ("ARs") 200-02, 300-1, and 300-38, which prohibit offenders or their relatives from sending money orders to other offenders. (*See* Doc. # 15 at 24-25 of 61; Doc. # 1 at 47-49 of 61).

Mr. Stanley filed a Step I grievance, requesting the return of the $200.00. (*See* Doc. # 15 at ¶¶ 28, 124; Doc. # 1 at 59 of 61). Defendant McMillian responded to the grievance that the money was confiscated for violation of a Code of Penal Discipline charge of bartering, which occurred on November 7, 2011, before Robert Lopez was discharged from the CDOC. (*See* Doc. # 15 at ¶¶ 29-31, 125-27; Doc. # 1 at 60 of 61). Mr. Stanley filed Step II and III grievances, which were denied. (*See* Doc. # 15 at ¶¶ 33-36, 47, 58-59; 76; Doc. # 1 at 46, 50, 57-58, 60 of 61). Pursuant to 42 U.S.C. § 1983, Mr. Stanley alleges in this lawsuit that Defendant McMillian violated his Fourteenth Amendment rights to due process and equal protection, "federal and state tort laws," and CDOC ARs "300-01, 200-02, 150-01, and 850-04." (*See* Doc. # 15 at ¶¶ 32, 43, 55, 105-06, 133-62). Mr. Stanley seeks declaratory and injunctive relief, compensatory and punitive damages, and costs. (*See id.* at 60-61 of 61).

II.     Standard of Review

Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing pursuant to Rule 12(b)(6) that Mr. Stanley fails to state a claim upon which relief can be granted. The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215 (10th Cir. 2007) (internal quotation marks and citation omitted). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Because Mr. Stanley appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.     Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.     Liability of Defendant in her Official Capacity

Mr. Stanley sues Defendant McMillian in both her official capacity and her individual capacity as "an employee of Correctional Corporation of America." (*See* Doc. # 15 at 2 of 61, ¶ 2, at 4 of 61, ¶ 8). To the extent that he is suing Defendant in her official capacity, Mr. Stanley is actually attempting to impose liability on her employer, the CDOC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state). The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. The Eleventh Amendment provides for the sovereign immunity of a state or state actors sued in federal court. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the real party in interest is the state, and the suit is barred by the Eleventh Amendment." *Id.* (internal quotation marks and citation omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus v. Granite*

*Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). To the extent that Mr. Stanley is suing Defendant, who is a state employee, in her official capacity for money damages, such claim is properly dismissed as barred by the Eleventh Amendment.

The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). *See also Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted).

Nor does the Eleventh Amendment bar actions for damages against state officials in their individual capacities. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Graham*, 473 U.S. at 167 n. 14). To the extent that Mr. Stanley is suing Defendant in her individual capacity, personal capacity suits seek to impose personal liability upon a government official for actions he or she takes. *Graham*, 473 U.S. at 165-67. The court proceeds to evaluate whether Mr. Stanley states any claim against Defendant in her individual capacity or for injunctive relief in her official capacity.

Defendant argues, *inter alia*, that Mr. Stanley fails to plead sufficient facts to support an inference that she had any personal participation in the alleged violation of his constitutional

rights. The court recommends that Defendant's Motion be granted on other grounds.[1]

B.      Claim for Violation of Fourteenth Amendment Due Process Rights

Mr. Stanley alleges that the confiscation of $200.00 from his inmate account violated his Fourteenth Amendment due process rights. (*See, e.g.,* Doc. # 15 at ¶¶ 32, 105, 111). "The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. amend. XIV, § 1). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). "In determining whether an individual has been deprived of his [Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).

To state a Due Process claim, Mr. Stanley must allege: (1) the deprivation of a property interest protected by the Due Process Clause; and (2) that he was not afforded the appropriate level of process. *Veile*, 258 F.3d at 1184-85 (citation omitted). "The first issue in the

---

[1] In light of the verified allegations and CDOC policy governing inmate funds (*see* AR 200-02), the court cannot conclude as a matter of law that Defendant McMillian did not have sufficient personal participation to support the violations alleged by Mr. Stanley under § 1983. Nor can the court conclude as a matter of law that Defendant has qualified immunity based upon "simply following the regulations as set forth by the CDOC. . . ." (*See* Doc. # 28 at 7 of 10). The court examines whether as a matter of law Mr. Stanley states a claim for which relief can be granted for "violation of U.S. Const. Amend. 14, federal and state tort laws," CDOC "Administrative Regulations 300-38, 300-01, 200-02, and 150-01," and "conspiracy." (*See* Doc. # 15 at ¶ 111).

due-process context is whether the plaintiff has established a protected interest," in this case a property interest. *Toevs v. Reid*, 685 F.3d 903, 910-11 (10th Cir. 2012) (citations omitted). The Tenth Circuit Court of Appeals "has ruled that property interest claims by prisoners are [ ] to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)) (other citations omitted). *See also Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010) ("Although *Sandin* addresses liberty interests, we interpret it to extend the same analysis to protected property interest inquiries.") (citation omitted). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). *See also Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) ("a prisoner is entitled to due process before he is subjected to conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, . . .") (internal quotation marks and citation omitted).

"[I]t is well-established that prisons have broad discretion in regulating the entry of material into prison." *Steffey*, 461 F.3d at 1222-23. "[T]he Supreme Court long ago characterized the receipt of money as one type of contraband that prison officials could legitimately ban." *Id.* at 1223 (citing *Bell v. Wolfish*, 441 U.S. 520, 551, 559 (1979) (upholding prison regulatory ban on inmate receipt of packages because "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence"). "Decisions from this and other circuits demonstrate that the seizure and forfeiture of currency as contraband is a typical incident of prison life, and is not a significant property interest deprivation." *Steffey*, 461 F.3d at 1223 (citing *Cosco*, 195 F.3d at 1224 (holding that regulation of the type and quantity of

personal property inmates may possess in their cells is a not an atypical, significant hardship of prison life); *Harris v. Forsyth*, 735 F.2d 1235, 1236 (11th Cir.1984) (holding that prison's confiscation of contraband currency is reasonable restriction on property rights)).

"Nor is it difficult to conclude that the property interest involved here is insignificant." *Steffey*, 461 F.3d at 1223. Mr. Stanley's interest in the $200.00 "was no more than an inchoate, unrealized expectation in a gift of contraband funds." *Id.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (internal quotation marks and citation omitted). "It cannot be said that Mr. [Stanley] had a legitimate claim of entitlement" to the money. *Id.* As a matter of law, the deprivation alleged by Mr. Stanley does not constitute an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Further, to the extent Mr. Stanley's claim is based on an alleged procedural due process violation under the Fourteenth Amendment for the deprivation of his property, it is well settled that

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Mr. Stanley does not allege that he was denied a meaningful post-deprivation state remedy. In fact, he alleges that he utilized the prison grievance procedures. "The Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process." *Klein v. McClaury*, 221 F.3d 1352, at * 2 (10th Cir. July 20, 2000) (citing *Hudson*, 468 U.S. at 536 n. 15). Mr. Stanley also alleges that he "filed with the Attorney General a

statutory notice of intent CRS 24-10-109, . . ." (*See* Doc. # 15 at ¶ 92).  Mr. Stanley's asserted property deprivation is appropriately addressed by following his postdeprivation remedies, including prison grievance procedures and the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-101 *et seq. See Elliott v. Cummings*, 49 F. App'x 220, 228 (10th Cir. Oct. 9, 2002) ("Either the prison grievance procedures, which [Mr. Stanley] pursued, or a state law claim . . . which [Mr. Stanley] presumably could pursue, provides an adequate post-deprivation remedy, such that his federal constitutional claim is subject to dismissal.") (citations omitted).[2]

In sum, Mr. Stanley does not state a claim for the deprivation of a property interest that is protected by the Due Process Clause or that he was denied the appropriate level of process.

C.   Claim for Violation of Fourteenth Amendment Equal Protection Rights

Mr. Stanley alleges that the confiscation of $200.00 from his inmate account violated his Fourteenth Amendment equal protection rights.  (*See* Doc. # 15 at ¶¶ 111, 163-66). The Equal Protection Clause of the Fourteenth Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike."  *City of Cleburne Texas v. Cleburne Living Center,* 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid classifications, but simply prevents government decision makers from treating differently persons who are in all relevant respects alike.  *Juarez v. Renico,* 149 F. Supp. 2d 319, 324 ( E.D. Mich. 2001).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730

---

[2]   Copies of unpublished decisions cited are attached to this Recommendation.

(4th Cir. 2002). *See also Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980) (the challenged disparate treatment must be the result of purposeful discrimination); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000) ("To state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent.").

First, Mr. Stanley does not adequately allege that he was treated differently than any similarly situated persons. In support of his equal protection claim, Mr. Stanley generally alleges that he "has been made aware of several occurrences in which, the defendant returned such funds to the senders, and on other occasions chose to keep the funds for DOC use." (*See* Doc. # 15 at 36 of 61 ("on several occasions when funds have been transferred to offenders' accounts from, allegedly, unauthorized individuals, defendant McMillian ha[s] returned those funds to the senders")). Mr. Stanley does not identify any specific inmate or allege facts that would establish he was similarly situated in all material respects to any inmates to whom he compares himself. His conclusory allegations that he was treated differently from similarly situated inmates without additional information is insufficient to state an equal protection claim. *Thomas v. N.M. Corr. Dep't*, 272 F. App'x 727, 729 (10th Cir. 2008) (citation omitted). An equal protection claim is entirely conclusory and without merit where a plaintiff fails to allege facts that he was treated differently than those similarly situated. *Cosco*, 195 F.3d at 1222. Without sufficient factual allegations that he was treated differently than other similarly situated persons, Mr. Stanley fails to state an equal protection claim. *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that [Mr. Stanley] is similarly situated to those who allegedly receive favorable treatment, [he] does not have a viable equal protection claim."); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Stanley] must first make a threshold showing that [he was] treated

differently from others who were similarly situated to [him].").

Second, Mr. Stanley does not allege a fundamental right or differential treatment based on a suspect classification or membership in a protected class. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (a prisoner asserting an equal protection claim must show how he was treated differently based on a suspect classification and not based on a legitimate penological purpose); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (If a claim is not based on a suspect classification or membership in a protected class, the plaintiff must also allege sufficient facts to establish that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose."). Mr. Stanley has not alleged that Defendant treated him differently based on his membership in a suspect class or that any distinction between himself and other inmates was not reasonably related to some legitimate penological purpose.

Third, Mr. Stanley does not allege that Defendant acted based upon a discriminatory intent or motive. *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted); *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision"). *See also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.") (citations omitted).

Absent allegations that he was treated differently than other similarly situated persons without a legitimate penological purpose or that Defendant acted with a discriminatory motive regarding the confiscation of the $200.00, Mr. Stanley fails to state an equal protection claim.

11

D.      Claim for Violation of CDOC Administrative Regulations

To the extent that Mr. Stanley alleges that the confiscation of $200.00 from his inmate account was a violation of "DOC Administrative Regulations 300-38, 300-01, 200-02, and 150-01," the "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision")). *See also Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (claim under section 1983 is available to redress violations of federal statutory and constitutional law); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation of a right secured by the Constitution or laws of the United States.) (citations omitted).


E.      Claim for Conspiracy

As the court has concluded, *supra.*, that Mr. Stanley has not stated any actionable claim for violation of his federally protected rights, he cannot state a claim for conspiracy to violate those rights. *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) ("In order to succeed on [a § 1983 conspiracy] claim," the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right.  We have already determined, however, that [the plaintiff] has failed to establish the existence of any constitutional violations. Since an essential element of the conspiracy claim is absent, the allegation fails.") (citation omitted).  *See also Jones v. Clinton*, 990 F. Supp. 657, 676 (E.D. Ark. 1998) ("absent an underlying violation of federal law, there can be no actionable claim alleging a [§ 1985] conspiracy to achieve that end").

Even if there were a valid underlying claim, Mr. Stanley's allegation that "a claim of conspiracy is imputed based on the defendant's actions in association with defendants Rook, Griffith, Hernandez, and Miller" is insufficient to state a claim. *See, e.g., Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."). *See also Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir.1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences.") (internal quotation marks and citation omitted). Mr. Stanley fails to allege facts sufficient to suggest the existence of the elements of a conspiracy. He does not allege any specific communication, agreement, cooperation, or concerted action from which a conspiracy could be inferred. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice."). Mr. Stanley's conclusory allegation of conspiracy is not sufficient to state a claim.[3]

F.   Punitive Damages

To the extent that Mr. Stanley seeks punitive damages, he must claim that Defendant acted with an evil intent or with reckless indifference. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Mr. Stanley does not allege that Defendant maliciously intended to harm him or was recklessly indifferent to potential harm to him. "Simple ignorance of the applicable legal rules, even

---

[3] To the extent that Mr. Stanley is bringing any claims under "federal and state tort laws" (*see* Doc. # 15 at ¶¶ 11, 105, 111), he identifies no federal or state tort claims.

arrogant ignorance, does not by itself indicate" the level of intent required to successfully plead a claim for punitive damages.  *See Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) (denying punitive damages where "there was no evidence of malice, wantonness, or oppressiveness").  Further, "a claim for punitive damages most certainly depends upon the merits of the claimant's substantive assertions and is subject to the physical injury requirement of 42 U.S.C. § 1997e(e)."  *Milledge v. McCall*, 43 F. App'x 196, 199 (10th Cir. 2002) (citation omitted).  The court has found, *supra.*, that Mr. Stanley fails to state a claim for a constitutional violation.  For this reason also, his claim for punitive damages is properly dismissed.


G.	Qualified Immunity

Defendant in her individual capacity raises the defense of qualified immunity.  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*.  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Id.*

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established when the alleged violation occurred.  *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr.

Stanley fails to state any plausible constitutional violation, Defendant in her individual capacity is entitled to qualified immunity. The court need not reach the "clearly established" prong of qualified immunity to conclude that Mr. Stanley's claims fail as against Defendant in her individual capacity. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

Accordingly, IT IS RECOMMENDED that Defendant McMillian's Motion to Dismiss (Doc. # 28) (filed on May 30, 2013) be GRANTED. Mr. Stanley's claims against Defendant in her official capacity for money damages are properly dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) as barred by the Eleventh Amendment.[4] His claims against Defendant in her official capacity for injunctive relief and in her individual capacity are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to which relief can be granted. As no claims remain, the Amended Complaint is properly dismissed in its entirety.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

---

[4] Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter jurisdiction in the Complaint. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (Eleventh Amendment "immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)). "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect." *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010). *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 14th day of August, 2013.

BY THE COURT:

   s/Craig B. Shaffer   
United States Magistrate Judge