IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-02944-PAB-CBS

ALEXANDER STANLEY,

        Plaintiff,

v.

MALINDA MCMILLIAN,

        Defendant.

_____

### ORDER

_____

This matter is before the Court on the Recommendation of United States
Magistrate Judge [Docket No. 52] (the "Recommendation").  The magistrate judge
recommends that the Court dismiss the amended complaint [Docket No. 15] for failure
to state a claim.[1]  On October 10, 2013, plaintiff Alexander Stanley filed timely
objections [Docket No. 57] to the Recommendation.  Therefore, the Court will
"determine de novo any part of the magistrate judge's disposition that has been
properly objected to."  Fed. R. Civ. P. 72(b)(3).

Plaintiff is an inmate at the Crowley County Correctional Facility, a prison
operated by the private company Correctional Corporation of America ("CCA") under
contract with the Colorado Department of Corrections ("CDOC").  Defendant is an

_____

[1]Defendant Malinda McMillian filed a motion to dismiss [Docket No. 28], which
the magistrate judge recommends the Court deny.  Docket No. 52 at 5-6.  The
magistrate judge sua sponte took up the question of whether plaintiff states a claim for
relief and, finding that he does not, recommends that the Court dismiss the amended
complaint on that basis.  *Id*. at 15.

employee of CCA.  In light of plaintiff's pro se status, the Court reviews his filings

liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d

1106, 1110 n. 3 (10th Cir. 1991).  The underlying facts of this case are set forth in the

Recommendation and will not be recited here.

## I.  STANDARD OF REVIEW

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to

state a claim upon which relief can be granted.  For a complaint to state a claim, it must

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. (8)(a)(2).  Rule 8(a)'s "short and plain statement" language

requires that a plaintiff allege enough factual matter that, taken as true, makes his

"claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286

(10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This

"plausibility" standard requires that relief must plausibly follow from the facts alleged,

not that the facts themselves be plausible.  *Bryson*, 534 F.3d at 1286.  In considering a

plaintiff's claims, the Court "must accept all the well-pleaded allegations of the

complaint as true and must construe them in the light most favorable to the plaintiff."

*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## II.  ANALYSIS

### A.  Procedural Due Process

Plaintiff objects to the Recommendation insofar as it recommends dismissal of

his claim pursuant to 42 U.S.C. § 1983 for deprivation of property without due process

of law.[2]  Docket No. 57 at 2-3.  Plaintiff alleges that defendant violated his right to due process by confiscating $200 from his CDOC inmate account on the basis that it was obtained through bartering without first providing formal notice and a hearing on the bartering charge.  Docket No. 15 at 23, ¶ 111.

The Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

### 1. Protected Property Interest

To determine whether a protected property interest is at stake, courts in this Circuit ask whether the "prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"  *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (quoting *Sandin v. Connor*, 515 U.S. 472, 486 (1995)).  This inquiry focuses on the "nature of the deprivation" as opposed to the "language of a particular [state] regulation."  *Sandin*, 515 U.S. at 481.

Plaintiff argues that he has a protected right, based on the CDOC's Administrative Regulations, to an inmate account; to receive deposits in that account from friends and family outside the prison; and to receive formal notice and a hearing before the CDOC removes money from that account on a charge of bartering.  Docket

---

[2]Plaintiff does not object to dismissal of his other constitutional and state law clams.  Docket No. 57 at 2-3.

No. 57 at 13, ¶ 37 (citing CDOC Administrative Regulations Nos. 150-01, 200-02, and 850-06).

Before *Sandin*, a number of circuits, including this one, held that prisoners had a protected property interest in non-contraband funds held in inmate accounts. *See Burks v. Pate*, 119 F. App'x 447, 450 (4th Cir. 2005) ("A prisoner has a protected property interest in his prison trust account."); *Vance v. Barrett*, 345 F.3d 1083, 1088 n.6 (9th Cir. 2003) ("we have little trouble concluding that [plaintiff] has [] a protected right to accrued interest on his inmate accounts"); *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997) ("[p]risoners do have a protected interest in their money" stored in prisoner trust accounts); *Mahers v. Halford*, 76 F.3d 951 (8th Cir. 1996) (prisoners have an interest in money received from outside sources); *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989) ("To the extent that [the funds in plaintiff's prison account] constitute monies received from friends and family outside the prison, plaintiff clearly has a property interest in them."); *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986) ("It is beyond dispute that Campbell has a property interest in the funds on deposit in his prison account.").

Following *Sandin*, however, the Tenth Circuit called into question its holding that prisoners have a protected interest in their prison accounts. In *Steffey v. Orman*, 461 F.3d 1218, 1221-23 (10th Cir. 2006), the court held that a prisoner did not have a protected interest in funds received from the mother of another inmate because the funds were contraband in violation of Oklahoma State Penitentiary rules. In explaining why *Gillihan* did not apply, the court suggested that *Gillihan*'s holding with respect to a

4

prisoner's interest in his funds was dicta "because it is not apparent from the decision that any monies from outside sources were at issue in that case." *Id*. at 1223 n.4.  The court further noted that "*Gillihan* was decided before this court held in *Cosco*, 195 F.3d at 1224, that the property-interest due-process rights of prisoners are to be determined based on the nature of the deprivation in accordance with the 'atypical and significant' deprivation analysis articulated in *Sandin*." *Id*.  The court also distinguished *Steffey* from *Gillihan* on the basis that the "money at issue [in *Gillihan*] was not contraband." *Id*.

The Tenth Circuit again rejected the holding of *Gillihan* in *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010).  The plaintiff in *Clark* alleged that his due process rights were violated when prison officials froze his trust account without first notifying him in response to a garnishment summons they had received. *Id*. at 688.  The court stated that, "[b]ecause it is based on the 'legitimate expectations' methodology expressly abrogated by *Sandin*, *Gillihan*'s holding that prisoners have a protected property interest in the funds in their prison trust accounts is no longer good law."  The court held that defendants were entitled to qualified immunity because "neither the Supreme Court nor any court of appeals had applied *Sandin*'s 'atypical and significant hardship' test to the freezing of a prison trust account by 2007," when the challenged conduct occurred. *Id*. at 691-92; *see id*. at 691 n.4 (noting that *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 178 (3d Cir. 2011)–which held that prison officials deprived an inmate of a protected interest by assessing his inmate account for medical and other expenses–was not decided until after the conduct challenged by Mr. Clark took place).

The magistrate judge relied on *Steffey* in concluding that Mr. Stanley has "no

more than an inchoate, unrealized expectation in a gift of contraband funds." Docket No. 52 at 8. The funds at issue in *Steffey*, however, were undisputedly contraband. *See* 461 F.3d at 1223 n.4. Mr. Stanley maintains that the $200 in his account were not received in violation of CDOC Administrative Regulations against bartering. *See, e.g.*, Docket No. 15 at 40, ¶ 188. Thus, *Steffey* and the cases cited therein do not direct a finding that Mr. Stanley has no protected interest in the $200. *See* 461 F.3d at 1220-21 ("it was undisputed that the money order violated OSP-120230-02, because Mr. Steffey admitted during his administrative grievance proceedings that Ms. Grubb was the mother of an ODOC inmate"), citing *Cosco*, 195 F.3d at 1222-24 (prisoners were not deprived of due process by implementation of a new prison regulation restricting the items they could store in their cells where they were given the option of mailing the disputed property to their families; prisoners did not have a protected interest in storing property in their cells or in the projected income they anticipated earning from the property); *Harris v. Forsyth*, 735 F.2d 1235, 1235-36 (11th Cir. 1984) (confiscation of inmate's hard currency based on prison rule banning possession of hard currency did not violate right to due process); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) (inmate did not have protected interest in a painting in his cell that belonged to a former inmate because prison rules provided that items belonging to someone else were contraband); *Sullivan v. Ford*, 609 F.2d 197, 198 (11th Cir. 1980) (confiscation of cash stored in inmate's cell did not violate due process clause where prisoner had notice of prison regulation providing that cash in excess of $15.00 was contraband and subject to confiscation).

To determine the nature of the property interest at stake in this case, the Court would have to apply the rule announced in *Sandin* to inmate funds whose status as contraband is disputed.  In other words, the question before the Court is what level of process is constitutionally due before a prison official may confiscate an inmate's funds, deposited in his account by individuals outside the prison, as contraband.  The Court need not decide this question, however, because, as explained below, even assuming that a protected property interest is at stake, the facts alleged establish that Mr. Stanley was afforded adequate post-deprivation process.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

### 2.  Sufficiency of Process

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson*, 468 U.S. at 533.  A court must "ask what process the State provided, and whether it was constitutionally adequate," taking into account the "procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."  *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Colorado Rule of Civil Procedure 106 provides that, "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law," a Colorado district court may review the

decision to determine whether the officer "exceeded [her] jurisdiction or abused [her] discretion, based on the evidence in the record before the defendant body or officer." Colo. R. Civ. P. 106(a)(4)(I). A decision is "quasi-judicial" if it is "likely to adversely affect the protected interests of specific individuals" and is "reached through the application of preexisting legal standards or policy considerations to present or past facts presented to the governmental body." *Widder v. Durango Sch. Dist. No. 9-R*, 85 P.3d 518, 527 (Colo. 2004) (internal citation omitted). "The failure to provide due process is an abuse of discretion" under Rule 106(a)(4). *Fisher v. Colo. Dep't of Corr.*, 56 P.3d 1210, 1213 (Colo. App. 2002). "In the event the court determines that the governmental body, officer or judicial body has failed to make findings of fact or conclusions of law necessary for a review of its action, the court may remand for the making of such findings of fact or conclusions of law." Colo. R. Civ. P. 106(a)(4)(IX). Rule 106.5 provides specific procedures for the application of Rule 106(a)(4) in the context of a correctional facility. Colo. R. Civ. P. 106.5(a).

The magistrate judge found that "Mr. Stanley's asserted property deprivation is appropriately addressed by following his postdeprivation remedies, including prison grievance procedures and the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-101 *et seq*." Docket No. 52 at 9.

Plaintiff objects to the magistrate judge's conclusion on the basis that the grievance procedure does not allow for review of a violation of the Code of Penal Discipline ("COPD"), which plaintiff alleges occurred in this instance and lies at the heart of his due process claim. Docket No. 57 at 16, ¶ 45; Docket No. 67 at 4, ¶ 18; *see* CDOC Administrative Regulation No. 850-04.IV.D.2 ("This grievance procedure

8

**may not** be used to seek review of . . . Code of Penal Discipline convictions") (emphasis in original).[3]  Plaintiff recognizes that he has the right to seek review under Rule 106, but argues that *Monroe v. Pape*, 365 U.S. 167, 173-74 (1961), "allows [him] to invoke[] [his] federal right under the Fifth and Fourteenth Amendments, rather than under state law."  Docket No. 57 at 17, ¶ 46 ; *see also* Docket No. 67 at 5, ¶ 23 ("My only remedy from the beginning, was . . . to seek redress in the state court or in the federal court; and I believe the choice as to which avenue to pursue was mine to make."  Docket No. 67 at 5, ¶ 23.

Plaintiff misunderstands the implications of *Monroe*, which the Supreme Court clarified in *Zinermon*:

> A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense.  In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.  Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

494 U.S. at 125-26 (internal citations omitted).

Plaintiff's due process claim is cognizable under Rule 106(a)(4).  *See Fisher*, 56 P.3d at 1213.  A state court applying Rule 106 would determine whether defendant

---

[3]A court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment.  *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  State administrative regulations are subject to judicial notice.  *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 742 n. 4 (1976).

exceeded her jurisdiction or abused her discretion based on the evidence before her at

the time.  Colo. R. Civ. P. 106(a)(4)(I).  It could, alternatively, determine that the record

of defendant's decision-making process was insufficient and remand the matter for

additional proceedings.  *See id*. at 106(a)(4)(IX).  This review would constitute

constitutionally adequate post-deprivation process within the meaning of *Zinermon*.

*See* 494 U.S. at 125-26.  Plaintiff does not set forth any reason why review under Rule

106 would be unavailable or insufficient.

In addition, plaintiff is mistaken insofar as he argues that the grievance

procedure was inapplicable to his claims because it cannot be used to review COPD

convictions.  Plaintiff was not charged with bartering–rather, this was the reason for the

confiscation based on the investigation by prison officials.[4]  Thus, AR 850-04.IV.D.2

was inapplicable and did not prevent him from being able to seek review through the

grievance procedures.  Plaintiff's allegations demonstrate that the grievance procedure

was a post-deprivation process that he could–and did–utilize to challenge the

confiscation.  The fact that he is displeased with the result does not render the process

---

[4]In her written response to plaintiff's Step 1 grievance, defendant McMillian noted as follows: "You received funds from inmate Lopez's daughter.  The investigation included listening to Lopez's phone calls.  On 11/07/11, Lopez instructed his daughter to send you the funds.  Lopez was not released from the custody of DOC until 11/08/11, clearlyafter [sic] the phone call was made.  This phone call is proof of bartering.  Code of Penal Discipline's definition of bartering includes 'when an offender arranges the payment from one offender to another through outside resources without authorization.'"  Docket No. 1 at 60.  In her written response to plaintiff's Step 2 grievance, Elizabeth Rook noted as follows: "In a phone call made by Robert Lopez # 153795 on November 7, 2011 at 1843 hours, Mr. Lopez tells his daughter that he needs to send $200 to the [guy?] that helped him out because he did not charge him.  Lopez says, 'I told him I would send him $200.'  Lopez'sdaughter [sic] replies 'we can do that as soon as you get here just have his last name and DOC number.'"  *Id.* at 61.

10

he received constitutionally inadequate.

In sum, plaintiff's due process claim fails as a matter of law because, taking his allegations as true, the state provided adequate post-deprivation process to remedy any violation that might have occurred. *See Zinerman*, 494 U.S. at 127.

### B. Review Pursuant to 28 U.S.C. § 1915A and Local Rule 8.2C

Plaintiff objects to the Recommendation on the basis that the magistrate judge relied on arguments that defendant did not advance in her motion to dismiss and, because plaintiff's complaint survived review pursuant to 28 U.S.C. § 1915A and Local Rule 8.2C., the magistrate judge's "review of the claim amounts to a second summary review; [and] should not be allowed." Docket No. 57 at 8, ¶ 22.

A court "may dismiss a case for failure to state a claim even if it does so based on arguments that defendants did not themselves raise." *Coates v. Heartland Wireless Communications, Inc.*, 55 F. Supp. 2d 628, 633 (N.D. Tex. 1999) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 301 (2d ed. 1990)). The fact that plaintiff's complaint survived an initial summary review does not bar the magistrate judge or the Court from determining, upon a more thorough review, that the complaint fails to state a claim under Rule 12(b)(6). Here, plaintiff has had a full opportunity to object to the bases of the Recommendation.

### C. Qualified Immunity

Plaintiff objects to the magistrate judge's conclusion that defendant is entitled to qualified immunity. Docket No. 57 at 5-6, ¶¶ 14-16. Although the Court need not decide this issue, it notes that the Tenth Circuit has held that prison guards employed

by private companies are not entitled to qualified immunity.  *See Phillips v. Tiona*, 508 F. App'x 737, 751-52 (10th Cir. 2013) ("whereas . . . CDOC . . . employees in their individual capacities enjoy qualified immunity in § 1983 damages actions, CCA and its private prison employees" do not) (citing *Richardson v. McKnight*, 521 U.S. 399, 412 (1997)).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 52] is ADOPTED in part.  Plaintiff Alexander Stanley's claims under the Fourteenth Amendment and his claim for punitive damages are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  It is further

**ORDERED** that Defendant's Motion to Dismiss [Docket No. 28] filed by defendant Malinda McMillian is DENIED as moot.  It is further

**ORDERED** that this case is DISMISSED.

DATED February 26, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge